IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

| | |
|---|---|
| ROBERT L. MCCRAY (AIS# 167644), | * |
| | * |
| Plaintiff, | * |
| | *   2:05-CV-887-F |
| V. | * |
| PRISION HEALTH SERVICES, INC., ET AL. | * |
| Medical Defendants. | |

**SPECIAL REPORT OF THE MEDICAL DEFENDANTS**

COME NOW Defendants Prison Health Services, Inc. (hereinafter "PHS"), Winfred Williams, M.D. (incorrectly named in the Plaintiff's Complaint as "Dr. Walter Williams"), John Peasant, M.D. (incorrectly named in Plaintiff's Complaint as "Dr. Pleasant"), Michael Robbins, M.D., Aaron Bee, R.N. (incorrectly named in the Plaintiff's Complaint as "Mr. Arron Bee"), Lisa Lassiter, C.R.N.P. and Debra Austin, L.P.N. (hereinafter referred to collectively as "the Medical Defendants"), in response to this Honorable Court's Order of January 20, 2006, and present the following Special Report with regard to this matter:

**I. INTRODUCTION/ PROCEDURAL HISTORY**

The Plaintiff, Robert McCray (AIS# 167644) is an inmate who has been confined at multiple correctional facilities in the State of Alabama since 1992. (See Complaint and Recommendation of Magistrate Judge Delores R. Boyd, dated January 20, 2006). Specifically, this inmate was confined at Donaldson Correctional Facility from 1992 through 2001, at Bibb

County Correctional Facility from 2001 through 2004, and finally, at Staton Correctional Facility from 2004 through November 23, 2005 when he was paroled.[1] (Id.)

On September 19, 2005, Mr. McCray filed a lawsuit against PHS, the Company that has contracted with the Alabama Department of Corrections to provide healthcare to inmates since November 3, 2003; Winfred Williams, M.D. the Medical Director for Staton Correctional Facility from July 2004 through May 2005; John Peasant, M.D., the Medical Director for Staton Correctional Facility from June 2005 to present; Neurologist B.P. Buhta, M.D., F.A.C.S., a Montgomery, Alabama Urologist; Thomas Beatrous, M.D., a Montgomery, Alabama Oncologist; a physician identified only as "Dr. McClain," Lisa Lassiter, C.R.N.P., a Nurse Practitioner at Staton, Debra Austin, L.P.N., and Aaron Bee, R.N., nurses employed at Staton at the time of this inmate's incarceration; the Alabama Department of Corrections; Captain Fredrick Freeman; Sergeant Thomas Butler; "Lieutenant Jones," Officer Bordoff; "Officer Webster," "Officer Parker; and "Officer Booker" claiming that these Defendants have failed to afford him appropriate medical treatment for prostate cancer at all times subsequent to November of 1997. (See Complaint).

On January 20, 2006 Magistrate Judge Delores R. Boyd issued an Order limiting the Plaintiff's claims considerably. (See Recommendation of Magistrate Judge Boyd dated January 20, 2006). Judge Boyd determined, from a review of the Plaintiff's Complaint, and Complaint as Amended, that many of the Plaintiff's claims against these Defendants were due to be dismissed for procedural deficiencies. (Id.) Judge Boyd recommended: (1) that the Plaintiff's claims for inadequate medical care against the Defendants which occurred prior to September 19, 2003 be

---

[1] This inmate was paroled from Staton Correctional Facility on November 23, 2005. The Medical Defendants have attempted to serve him with documents filed in this case at his last known address, but, the documents have been returned due to insufficient address. This inmate has not provided the Medical Defendants with a current, updated address.

2

dismissed pursuant to the applicable statute of limitations, (2) that any and all claims arising from actions taken against the Plaintiff during his confinement at either Bibb County Correctional Facility or William Donaldson Correctional Facility be dismissed for Plaintiff's failure to file these claims in the appropriate venue, (3) that Defendants "Medical Administrator-Bibb Correction," Captain Fredrick Freeman, Sergeant Thomas Butler, and Lieutenant Jones be dismissed as employees of Bibb County Correctional Facility and William Donaldson Correctional Facility respectively, (4) that this inmate's treating "free world" physicians, D.P. Buhta, M.D., F.A.C.S. and Thomas Beatrous, M.D. be dismissed, (5) that Defendants Bordoff, Webster, Parker and Booker be dismissed for Plaintiff's failure to state a claim for which relief could be granted, and (6) that the Alabama Department of Corrections be dismissed pursuant to immunity. (Id.) This Honorable Court adopted Judge Boyd's recommendations on February 27, 2006.

On April 3, 2006, Magistrate Judge Boyd further recommended that all claims against Defendant "Dr. McClain" be dismissed for Plaintiff's failure to effectuate proper service. (See Recommendation of Magistrate Judge Delores Boyd, dated April 3, 2006).

Subsequent to Magistrate Judge Boyd's recommendation, as adopted by this Court, the Plaintiff's lawsuit proceeded against the Medical Defendants specifically for care provided this inmate for treatment of prostate cancer subsequent to June of 2004. (See Recommendation of Magistrate Judge Boyd dated January 20, 2006). Dr. Williams treated the Plaintiff as Medical Director for Staton Correctional Facility for prostate cancer from July 2004 through May 2005. (See Exhibit "B"). In June of 2005, John Peasant, M.D. assumed responsibility as Medical Director for Staton Correctional Facility, and treated the Plaintiff for this condition until he was paroled on November 23, 2005. (See Exhibit "C").

Defendants Michael Robbins, M.D., Aaron Bee, R.N., Lisa Lassiter, C.R.N.P. and Debra Austin, L.P.N. are named as Defendants in the Plaintiff's Complaint, but McCray has failed to state a claim against them for which relief may be granted[2,3,4]. (See Complaint).

As directed, the Medical Defendants have undertaken a thorough review of Plaintiff McCray's claims to determine the facts and circumstances relevant thereto. At this time, the Medical Defendants are submitting this Special Report, which is supported by a Certified Copy of Plaintiff McCray's medical records (attached hereto in their entirety as Exhibit "A"), the Affidavit of Winfred D. Williams, M.D. (attached hereto as Exhibit "B") and the Affidavit of John Peasant, M.D. (attached hereto as Exhibit "C"). These evidentiary materials demonstrate that Plaintiff McCray has been provided appropriate medical treatment at all times for prostate cancer, and that the allegations in his Complaint are completely unfounded and without merit.

## II. NARRATIVE SUMMARY OF FACTS

At all times pertinent to the Plaintiff's remaining claims, Robert McCray (AIS# 167644) was incarcerated as an inmate at Staton Correctional Facility. (See Recommendation of Magistrate Judge Boyd, dated January 20, 2006). McCray has been seen and evaluated by Staton's Medical or Nursing Staff, and has been referred to appropriate care providers and given appropriate care, each time he has registered any complaint at Staton with regard to prostate cancer. (See Exhibits "A," "B," & "C").

Prior to treating Mr. McCray, Dr. Williams reviewed this inmate's medical history and determined that he had a history that was significant for intermediate prostate adenocarcinoma,

---

[2] Dr. Robbins provided care to this inmate prior to September 19, 2003; therefore, pursuant to this Court's Order, all claims against him are due to be dismissed. (See Recommendation of Magistrate Judge Boyd, dated January 20, 2006).

[3] Nurse Austin is named as a Defendant, but nowhere in the Plaintiff's Complaint has he alleged that she acted inappropriately. (See Complaint).

[4] The Plaintiff has also failed to state a claim against Mr. Bee or Nurse Austin for failure to appropriately treat his prostate cancer. (See Complaint).

4

prostate cancer. (See Exhibit "B"). Dr. Williams further noted that Mr. McCray had a well-documented history of noncompliance for treatment of this condition. (Id.) In November of 2002, subsequent to receiving a prostate biopsy showing the existence of prostate adenocarcinoma, Mr. McCray was referred to Urologist D.P. Buhta, M.D., F.A.C.S. who offered to remove the prostate gland surgically. (See Exhibits "B" & "A-5"). Mr. McCray refused Dr. Bhuta's offer, requesting instead to receive treatment via external beam radiation therapy and Lupron injection therapy.[5] (Id.) Two months later, pursuant to this request, Mr. McCray was transferred to Oncologist Thomas E. Beatrous, M.D. for a cancer treatment consultation for treatment with external beam radiation and Lupron injection therapy. (See Exhibits "B" & "A-6"). Dr. Beatrous recommended this treatment course for a period of one year. (Id.) Mr. McCray refused Dr. Beatrous' recommendation stating that he had reconsidered Dr. Bhuta's initial offer for surgical removal of the prostate. (Id.) Pursuant to Mr. McCray's wishes, he was again sent to Dr. Bhuta for re-evaluation for surgical intervention on February 17, 2003. (See Exhibits "B" & "A-7"). However, Mr. McCray refused treatment a third time indicating that he had changed his mind again and stated that he would only accept treatment via external radiation treatment with Lupron injection therapy. (Id.)

On March 4, 2003, Mr. McCray changed his mind a fourth time and signed a release of responsibility form whereby he indicated that he would accept neither surgery nor external radiation therapy, opting instead for bracytherapy (internal radiation seed implant therapy). (See Exhibits "B" & "A-8"). Pursuant to Mr. McCray's request, he was transferred to UAB's Oncology

---

[5] Lupron is a member of a class of drugs known as luteinizing hormone-releasing hormone agonists, also called LH-RH agonists. Lupron works by lowering the levels of testosterone through a complex series of chemical pathways. This decreases the amount of testosterone in the body, which may result in a reduction of symptoms related to the prostate cancer.

Department on June 13, 2003 for bracytherapy consultation. (See Exhibits "B" & "A-9"). John B. Fiveash, M.D. evaluated Mr. McCray and concluded that McCray's prostate was too large for bracytherapy treatment and suggested treatment with Lupron injections, a course of treatment Mr. McCray refused. (Id.) Dr. Fiveash noted that Mr. McCray was not a likely candidate for bracytherapy. (Id.)

Dr. Williams ordered a bone scan on August 31, 2004 to determine the progression of Mr. McCray's cancer. (See Exhibits "B","A-10" & "A-11"). The bone scan showed several areas of abnormal uptake, some of which were suspicious for metastatic process particularly in the right ribs and sternum. (See Exhibits "B" & "A-11"). Uptake was also noted in the lumbar spine. (Id.) On November 16, 2004 in response to the bone scan results, Mr. McCray was afforded x-ray evaluation of the lumbar spine and bilateral ribs which showed no definitive evidence of metastatic disease. (See Exhibits "B","A-13" & "A-14"). It was determined that Mr. McCray's prostate cancer had not spread outside of his prostate to other areas of his body. (Id at A-14).

On December 2, 2004, Dr. Williams referred Mr. McCray to Steven A. White, M.D. of the Montgomery Cancer Center for specialty evaluation. (Id.) Dr. White agreed that the Plaintiff's prostate cancer had not spread outside the prostate and that his PSA levels were at their historical low. (Id.) Dr. White noted that Mr. McCray refused surgical removal of the prostate, external radiation treatment and Lupron therapy injections. (Id.) Dr. White recommended a second bone scan. (Id.) Mr. McCray received this scan on January 17, 2005. (See Exhibits "B" & "A-15"). The scan showed no significant metastatic change since August 31, 2004. (Id.)

On March 18, 2005, Mr. McCray was referred to Donald A. Urban, M.D. at UAB for a radiation seed implantation consult. (See Exhibits "B" & "A-16"). Dr. Urban refused to treat Mr. McCray without a current prostate biopsy. (Id.) On May 17, 2005, Mr. McCray was transferred

to Paul M. Shashy, M.D. in order to receive the biopsy, but, Mr. McCray refused to consent to the prostate biopsy as was needed to begin radiation seed implant therapy. (See Exhibits "B" & "A-17").

On July 28, 2005, Dr. John Peasant provided Mr. McCray with an initial evaluation and determined that he had a history that was significant for prostate cancer. (See Exhibit "C"). A review of his medical records indicated that he had recently been transferred to UAB for evaluation by Urologist Donald A. Urban, M.D. who had refused to treat Mr. McCray without first obtaining a repeat prostate biopsy. (See Exhibits "C" & "A-16"). Mr. McCray was transferred to Paul M. Shashy, M.D. on May 17, 2005 to receive biopsy, but refused the procedure. (See Exhibits "C" & "A-17").

Since Mr. McCray refused the necessary biopsy, Dr. Peasant contacted Dr. Urban and convinced him to see Mr. McCray again in hopes that Mr. McCray would settle on a course of treatment. (See Exhibit "C"). Dr. Urban agreed to see Mr. McCray for a follow up appointment. (Id.) On August 25, 2005, Dr. Urban re-evaluated Mr. McCray and, again, McCray refused treatment. (See Exhibits "C" & "A-18"). Dr. Urban noted that Mr. McCray elected to follow his cancer expectedly and to forgo treatment. (Id.) On November 23, 2005, Mr. McCray signed a refusal treatment form indicating that he was refusing all medical treatment for prostate cancer including radiation, radiation seed implants or chemotherapy subsequent to be granted parole on November 23, 2005. (See Exhibits "C" & "A-19").

It is clear from the evidence and testimony now before the Court that Mr. McCray has been non-compliant with his treatment for prostate cancer. (See Exhibit "B"). In refusing care, he has obstructed PHS' ability to effectively treat this medical condition. (Id.) All of Mr. McCray's medical conditions have been evaluated in a timely fashion at Staton Correctional Facility and

7

his diagnosed conditions have been treated in a timely and appropriate fashion. (Id.) At all times, he has received appropriate medical treatment for his health conditions at Staton. (Id.) At no time has he been denied any needed medical treatment. (Id.)

The appropriate standard of care has been adhered to at all times in providing medical care, evaluation, and treatment to this inmate. (Id.) At no time have the Medical Defendants, or any of the medical or nursing staff at Staton Correctional Facility, denied Mr. McCray any needed medical treatment, nor have they ever acted with deliberate indifference to any serious medical need of Mr. McCray. (Id.) At all times, Mr. McCray's known medical complaints and conditions have been addressed as promptly as possible under the circumstances. (Id.)

### III. DEFENSES

The Medical Defendants assert the following defenses to the Plaintiff's claims:

1. The Medical Defendants deny each and every material allegation contained in the Plaintiff's Complaint and demand strict proof thereof.

2. The Medical Defendants plead not guilty to the charges in the Plaintiff's Complaint.

3. The Plaintiff's Complaint fails to state a claim against the Medical Defendants for which relief can be granted.

4. The Medical Defendants affirmatively deny any and all alleged claims by the Plaintiff.

5. The Plaintiff is not entitled to any relief requested in the Complaint.

6. The Medical Defendants plead the defense of qualified immunity and aver that the actions taken by the Medical Defendants were reasonable and in good faith with reference to clearly established law at the time of the incidents complained of by the Plaintiff.

7.     The Medical Defendants are entitled to qualified immunity and it is clear from the face of the Complaint that the Plaintiff has not alleged specific facts indicating that the Medical Defendants have violated any clearly established constitutional right.

8.     The Medical Defendants cannot be held liable on the basis of respondeat superior, agency, or vicarious liability theories.

9.     The Plaintiff is not entitled to any relief under 42 U.S.C. § 1983.

10.    The allegations contained in the Plaintiff's Complaint against the Medical Defendants sued in their individual capacities, fail to comply with the heightened specificity requirement of Rule 8 in § 1983 cases against persons sued in their individual capacities. See Oladeinde v. City of Birmingham, 963 F.2d 1481, 1485 (11th Cir. 1992); Arnold v. Board of Educ. Of Escambia County, 880 F.2d 305, 309 (11th Cir. 1989).

11.    The Medical Defendants plead all applicable immunities, including, but not limited to qualified, absolute, discretionary function immunity, and state agent immunity.

12.    The Medical Defendants aver that they were at all times acting under color of state law and, therefore, they are entitled to substantive immunity under the law of the State of Alabama.

13.    The Medical Defendants plead the general issue.

14.    This Court lacks subject matter jurisdiction due to the fact that even if the Plaintiff's allegations should be proven, the allegations against the Medical Defendants would amount to mere negligence which is not recognized as a deprivation of the Plaintiff's constitutional rights. See Rogers v. Evans, 792 F.2d 1052 (11th Cir. 1986).

15.    The Plaintiff's claims against the Medical Defendants in their official capacities are barred by the Eleventh Amendment to the United States Constitution.

16.     Alabama law provides tort and other remedies for the allegations made by the Plaintiff herein and such remedies are constitutionally adequate.

17.     The Medical Defendants plead the defense that at all times in treating Plaintiff they exercised the same degree of care, skill, and diligence as other physicians and nursing staff would have exercised under similar circumstances and that at no time did they act toward the Plaintiff with deliberate indifference to a serious medical need.

18.     The Medical Defendants plead the affirmative defense that the Plaintiff's Complaint fails to contain a detailed specification and factual description of the acts and omissions alleged to render him liable to the Plaintiff as required by § 6-5-551 of the Ala. Code (1993).

19.     The Medical Defendants plead the affirmative defenses of contributory negligence and assumption of the risk.

20.     The Medical Defendants plead the affirmative defense that Plaintiff's damages, if any, were the result of an independent, efficient, and/or intervening cause.

21.     The Medical Defendants plead the affirmative defense that they are not responsible for the policies and procedures of the Alabama Department of Corrections.

22.     The Medical Defendants plead the affirmative defense that the Plaintiff has failed to mitigate his own damages.

23.     The Medical Defendants plead the affirmative defense that they are not guilty of any conduct which would justify the imposition of punitive damages against them and that any such award would violate the United States Constitution.

24.     The Medical Defendants adopt and assert all defenses set forth in the Alabama Medical Liability Act § 6-5-481, et seq., and § 6-5-542, et seq.

25.     The Plaintiff has failed to exhaust his administrative remedies as mandated by the Prison Litigation Reform Act amendment to 42 U.S.C. § 1997e(a). The Plaintiff has failed to pursue the administrative remedies available to him. See <u>Cruz v. Jordan</u>, 80 F. Supp. 2d 109 (S.D. N.Y. 1999) (claims concerning Medical Defendants' deliberate indifference to a medical need is an action "with respect to prison conditions" and is thus governed by exhaustion requirement).

26.     The Prison Litigation Reform Act amendment to 42 U.S.C. § 1997(e)(c) mandates the dismissal of Plaintiff's claims herein as this action is frivolous, malicious, fails to state a claim upon which relief can be granted, or seeks money damages from the Medical Defendants who are entitled to immunity.

27.     The Plaintiff's claims are barred by the Prison Litigation Reform Act of 1995, 42 U.S.C. §1997(e).

28.     The Plaintiff has failed to comply with 28 U.S.C. § 1915 with respect to the requirements and limitations inmates must follow in filing <u>in forma pauperis</u> actions in federal court.

29.     Pursuant to 28 U.S.C. § 1915 A, this Court is requested to screen and dismiss this case, as soon as possible, either before or after docketing, as this case is frivolous or malicious, fails to state a claim upon which relief may be granted, or seeks money damages from the Medical Defendants who are state officers entitled to immunity as provided for in 42 U.S.C. § 1997 (e)(c).

30.     The Medical Defendants assert that the Plaintiff's Complaint is frivolous and filed in bad faith solely for the purpose of harassment and intimidation and requests this Court

pursuant to 42 U.S.C. § 1988 to award these Medical Defendants reasonable attorney's fees and costs incurred in the defense of this case.

31.  The Plaintiff's claims are moot because the events which underlie the controversy have been resolved. See Marie v. Nickels, 70 F., Supp. 2d 1252 (D. Kan. 1999).

### IV. ARGUMENT

A court may dismiss a complaint for failure to state a claim if it is clear that no relief could be granted under any set of facts that could be proven consistent with the allegations in the complaint. Romero v. City of Clanton, 220 F. Supp. 2d 1313, 1315 (M.D. Ala., 2002), (citing, Hishon v. King & Spalding, 467 U.S. 69, 73, (1984). "Procedures exist, including Federal Rule of Civil Procedure 7(a), or Rule 12(e), whereby the trial court may "protect the substance of qualified immunity," Shows v. Morgan, 40 F. Supp. 2d 1345, 1358 (M.D. Ala., 1999). A careful review of McCray's medical records reveals that McCray has been given appropriate medical treatment at all times. (See Exhibits "A," "B," & "C"). All of the allegations contained within McCray's Complaint are either inconsistent with his medical records, or are claims for which no relief may be granted. (Id.) Therefore, McCray's claims against the Medical Defendants are due to be dismissed.

In order to state a cognizable claim under the Eighth Amendment, McCray must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. See Estelle v. Gamble, 429 U.S. 97, 106 (U.S. 1976); McElligott v. Foley, 182 F.3d 1248, 1254 (11th Cir. 1999); Palermo v. Corr. Med. Servs., 148 F. Supp. 2d 1340, 1342 (S.D. Fla. 2001). In order to prevail, McCray must allege and prove that he suffered from a serious medical need, that the Medical Defendants were deliberately indifferent to his needs, and that he suffered harm due to deliberate indifference. See Marsh v. Butler County, 268 F.3d 1014, 1058

(11th Cir. 2001) and <u>Palermo</u>, 148 F. Supp. 2d at 1342. "Neither inadvertent failure to provide adequate medical care nor a physician's negligence in diagnosing or treating a medical condition states a valid claim of medical mistreatment under the Eighth Amendment." <u>Id</u>. (citations omitted).

Not every claim by a prisoner that medical treatment has been inadequate states an Eighth Amendment violation. Alleged negligent conduct with regard to inmates' serious medical conditions does not rise to the level of a constitutional violation. Alleged medical malpractice does not become a constitutional violation merely because the alleged victim is a prisoner. <u>See</u> <u>Estelle</u>, 429 U.S. at 106, <u>McElligott</u>, 182 F.3d at 1254, <u>Hill</u>, 40 F.3d 1176, 1186 (11th Cir. 1994), <u>Palermo</u>, 148 F. Supp. 2d at 1342. Further, a mere difference of opinion between an inmate and the physician as to treatment and diagnosis cannot give rise to a cause of action under the Eighth Amendment. <u>Estelle</u>, 429 U.S. at 106-108.

The Medical Defendants may only be liable if they had knowledge of McCray's medical condition, <u>Hill</u>, 40 F. 3d at 1191, and acted intentionally or recklessly to deny or delay access to his care, or to interfere with treatment once prescribed. <u>Estelle</u>, 429 U.S. at 104-105. Obviously, McCray cannot carry his burden. The evidence submitted with this Special Report clearly shows that the Medical Defendants did not act intentionally or recklessly to deny or delay medical care, or to interfere with any treatment which was prescribed or directed. The evidence demonstrates, to the contrary, that McCray's claims are without merit, that his medical conditions were at all times adequately and timely addressed, and that he was not denied any necessary medical treatment. (<u>See</u> Exhibits "A," "B," & "C"). Appropriate standards of care were followed at all times. The evidence, in other words, shows without dispute that all of Plaintiff McCray's medical conditions were thoroughly evaluated, treated, and monitored in a timely and appropriate

13

manner. (Id.)  These facts clearly disprove any claim that the Medical Defendants acted intentionally or recklessly to deny treatment or care.

The Medical Defendants are, further, entitled to qualified immunity from all claims asserted by McCray in this action.  There is no argument that the Medical Defendants were not acting within the scope of their discretionary authority.  See Eubanks v. Gerwen, 40 F. 3d 1157, 1160 (11th Cir. 1994); see also Jordan v. Doe, 38 F. 3d 1559, 1566 (11th Cir. 1994).  Because the Medical Defendants have demonstrated that they were acting within the scope of their discretionary authority, the burden shifts to McCray to show that the Medical Defendants violated clearly established law based upon objective standards.  Eubanks, 40 F. 3d at 1160.  The Eleventh Circuit requires that before the Medical Defendants' actions can be said to have violated clearly established constitutional rights, McCray must show that the right allegedly violated was clearly established in a fact-specific, particularized sense.  Edwards v. Gilbert, 867 F.2d 1271, 1273 (11th Cir. 1989), aff'd in pertinent part, rev'd in part on other grounds, sub nom., Edwards v. Okaloosa County, 5 F. 3d 1431 (11th Cir. 1989).

The Eleventh Circuit further requires that the inquiry be fact specific, and that officials will be immune from suit if the law with respect to their actions was unclear at the time the cause of action arose, or if a reasonable person could have believed that their actions were lawful in light of clearly established law and information possessed by the individual.  See Brescher v. Von Stein, 904 F.2d 572, 579 (11th Cir. 1990) (quoting, Anderson v. Creighton, 483 U.S. 635, 640, (U. S. 1987)).  The question that must be asked is whether the state of the law in 2005 gave the Medical Defendants fair warning that his alleged treatment of McCray was unconstitutional.  Hope v. Pelzer, 536 U.S. 730, 741 (U.S. 2002).

Therefore, to defeat summary judgment, McCray must be able to point to cases with "materially similar" facts, within the Eleventh Circuit, that would alert the Medical Defendants to the fact that his practice or policy violates his constitutional rights. See Hansen v. Soldenwagner, 19 F.3d 573, 576 (11th Cir. 1994). In order for qualified immunity to be defeated, preexisting law must "dictate, that is truly compel (not just suggest or allow or raise a question about), the conclusion for every like-situated, reasonable government agent that what the defendant is doing violates federal law in the circumstances." Lassiter v. Alabama A & M Univ., Bd. of Trustees, 28 F. 3d 1146, 1151 (11th Cir. 1994). The Medical Defendants submit that there is no case law from the United States Supreme Court, the Eleventh Circuit Court of Appeals, or District Courts sitting within the Eleventh Circuit showing that, under the facts of this case, it was clearly established that these alleged actions violated McCray's constitutional rights. All of McCray's medical needs have been addressed or treated. The Medical Defendants have provided McCray with appropriate medical care for prostate cancer at all times. (See Exhibits "A," "B," & "C").

Finally, pursuant to the Court's January 6, 2006 as extended, the Medical Defendants request that this Special Report be treated and denominated as a Motion to Dismiss and/or a Motion for Summary Judgment. The Medical Defendants have demonstrated both through substantial evidence and appropriate precedent that there is not any genuine issue of material facts relating to a constitutional violation, and that they are, therefore, entitled to a judgment in their favor as a matter of law. The Plaintiff's submissions clearly fail to meet his required burden.

## V. CONCLUSION

The Plaintiff's Complaint is due to be dismissed on its face, and is, further, disproven by the evidence now before the Court. All of the Plaintiff's requests for relief are without merit. Accordingly, the Medical Defendants request that this Honorable Court either dismiss the Plaintiff's Complaint, with prejudice, or enter a judgment in their favor.

Respectfully submitted,

L. Peyton Chapman, III
Alabama State Bar Number CHA060
R. Brett Garrett
Alabama State Bar Number GAR085
Attorneys for the Medical Defendants

RUSHTON, STAKELY, JOHNSTON &
GARRETT, P.A.
Post Office Box 270
Montgomery, Alabama 36101-0270
Telephone: (334) 834-8480
Fax: (334) 262-6277
E-mail: bg@rsjg.com


## CERTIFICATE OF SERVICE

I hereby certify that a copy of the above and foregoing has been served by U.S. Mail this the 13th day of April, 2006, to:

Robert L. McCray AIS #167644
Staton Correctional Facility
P.O. Box 56
Elmore, Alabama 36025

s/R. Brett Garrett GAR085
Attorneys for the Medical Defendants

16