IN THE UNITED STATES DISTRICT COURT
FOR THE MIDDLE DISTRICT OF ALABAMA
NORTHERN DIVISION

_____

| | | |
|---|---|---|
| ROBERT L. MCCRAY | * | |
| Plaintiff, | * | |
| v. | * | 2:05-CV-887-MEF |
| | | (WO) |
| PRISON HEALTH SERVICES, INC., | * | |
| *et al.*, | | |
| Defendants. | * | |

_____

**RECOMMENDATION OF THE MAGISTRATE JUDGE**

Plaintiff, Robert McCray ["McCray"], filed this 42 U.S.C. § 1983 action on September 19, 2005 against Prison Health Services, Inc., Dr. Michael Robbins, Dr. Winfred Williams,[1] Dr. John Peasant,[2] Aaron Bee, R.N., Donald McArthur, PA-C, Lisa Lassiter, C.R.N.P., and Debra Austin, L.P.N.[3] McCray brings this action against Defendants in their individual and official capacities for their failure to provide him with timely and adequate medical treatment which McCray alleges allowed slow growing prostate cancer to spread to

---

[1] Incorrectly identified in the complaint as "Dr. Walter Williams."

[2] Incorrectly identified in the complaint as "Dr. Pleasant."

[3] In his original complaint, McCray also named as defendants medical and prison personnel employed by the Bibb County Correctional Facility, a correctional officer employed by the Williams E. Donaldson Correctional Facility, several correctional officers employed by the Staton Correctional Facility, two free world physicians, and the State of Alabama Department of Corrections. By order entered February 27, 2006, these defendants were dismissed as parties to the complaint. (*See Doc. No. 23*.) That order also dismissed as barred by the statute of limitations those allegations raised in the complaint which concerned events which occurred prior to September 19, 2003. (*Id*.) By order entered April 25, 2006 the court dismissed McCray's complaint against Dr. McClain as service of the complaint on this individual was never perfected. F.R.Civ.P. 4(m). (*See Doc. No. 34*.)

his chest and back. McRay requests compensatory and punitive damages as well as declaratory and injunctive relief to include a court-ordered medical evaluation at the Maxwell Military Hospital or the Veteran's Administration Hospital with said evaluation to be filed as a second medical opinion in this matter.

In accordance with the orders of the court, Defendants filed an answer, special report, and supporting evidentiary material in response to the allegations contained in the complaint. (*Doc. Nos. 29, 30, 31*.) The court then informed McCray that Defendants' special report may, at any time, be treated as a motion for summary judgment, and the court explained to McCray the proper manner in which to respond to a motion for summary judgment. McCray filed a response to the special report filed by Defendants. (*Doc. No. 37*.) This case is now pending on Defendants' motion for summary judgment. Upon consideration of the motion, the evidentiary materials filed in support thereof, and McCray's opposition to this motion, the court concludes that Defendants' motion for summary judgment is due to be granted.

## I. BACKGROUND

*A. Plaintiff's Position*

McCray arrive at the Staton Correctional Facility ["Staton"] from the Bibb County Correctional Facility in June 2004.[4] He filed the instant complaint during his incarceration at Staton. In filing this action, McCray maintains that Defendants failed to provide him with

---

[4] During the pendency of this action, McCray was released on parole.

adequate and timely medical care and treatment which allowed localized prostate cancer to unnecessarily spread to his chest and lower back.[5] Despite being approved for radiation seeding implants in 2003, McCray maintains that Defendants failed to take steps to provide him with this procedure and instead, suggested that he undergo radiation treatment, a procedure objectionable to McCray who contends he was aware of less unpleasant treatment options. By failing to take him to the "designated location, " *i.e.*, U.A.B., for the radiation implants, McCray maintains that Defendants denied him vital, urgent, and timely cancer treatment which allowed the cancer to spread. McCray maintains that Defendants' acted "in concert" to deny him approved medical treatment in order to frustrate him to the point where he would "involuntarily consent to under go an extensive (8 week daily) radiation treatment instead of the one time treatment implants plaintiff preferred." McCray further contends that Defendants changed prescribed medication without explanation, increased or decreased dosages, failed to provide medication, kept him on medication which caused him serious side effects, and interfered with his ability to see an institutional physician. (*Doc. Nos. 1, 9*.)

B. *Defendants' Position*

McCray's medical history is significant for intermediate prostate cancer. When Dr. Williams began treating McCray, he was familiar with McCray's condition as he had reviewed his medical history. This history revealed that after McCray underwent a biopsy

---

[5]Around the time McCray filed this complaint, Dr. Williams was the Medical Director at Staton, a position he held from July 2004 until May 2005. In June 2005 Dr. Peasant became the Medical Director at Staton and treated McCray for prostate cancer until he was released from prison on January 21, 2006. (*Doc. No. 31, Exhs. B, C.*)

in November 2002 which indicated the existence of the prostate cancer, he was referred to Dr. D. P. Bhuta, a urologist in Montgomery, Alabama. McCray declined Dr. Bhuta's offer to surgically remove the prostate gland. Instead, McCray requested that he be treated with external beam radiation therapy and Lupron injection therapy. Pursuant to his request, McCray received a cancer consultation with Dr. Thomas Beatrous for treatment with external beam radiation and Lupron injection therapy. Dr. Beatrous recommended this course of treatment for a one-year period. McCray then refused the recommendation instead opting to reconsider Dr. Bhuta's initial offer regarding surgical removal of the prostate. In accordance with this wish, on February 17, 2003, McCray was referred back to Dr. Bhuta for re-evaluation of the surgical option. Once again, however, McCray had a change of heart and stated he would only undergo external radiation treatment with Lupron injection therapy. Still in conflict with the desired course of treatment, McCray once more changed his mind and in March 2003, after signing a release of responsibility form indicating that he would accept neither chemotherapy, external radiation therapy, or Lupron injection therapy, he requested brachytherapy (internal radiation seed implant therapy). As a result of this decision, McCray was transported to UAB's Oncology Department on June 13, 2003 for a brachytherapy consult with Dr. John Fiveash. Dr. Fiveash, concluding that McCray's prostate was too large for brachytherapy treatment, proposed that McCray receive Lupron injection treatment which he previously refused. Dr. Bhuta examined McCray at a follow-up visit on April 30, 2004. The physician discussed radiation therapy treatment with McCray as a result of his age and multiple medical problems but McCray elected to have Lupron

injections. (*Doc. No. 31, Exhs. A - Parts 1-5, Exhs. A5, A6, A7, A8, A9, Exh. B*; *see also Doc. No. 31, Exh. A - Part 1 at 10, Exh. A - Part 3 at 13-17.*)

Dr. Williams ordered a bone scan for McCray on August 31, 2004 to determine the progression of his cancer. Several areas of abnormal uptake were seen on the scan with some suspicious areas of metastatic process especially in the right ribs and sternum and the lumbar spine. Dr. Thomas Payne, a board certified radiologist, reviewed the results of the August 31, 2004 bone scan. He found evidence of degenerative joint disease at the lumbosacral level but concluded that there was no definite evidence of metastatic disease. Nonetheless, based on the results of the August 31, 2004 bone scan, McCray underwent an x-ray evaluation of the lumbar spine and bilateral ribs on November 16, 2004. This x-ray failed to reveal any definitive evidence of metastatic disease. It was, thus, determined that McCray's prostate cancer had not spread outside of his prostate to other areas of his body. (*Doc. No. 31, Exh. A-10 - A-14, Exh. B.*)

On December 2, 2004 Dr. Williams referred McCray to Dr. Steven White of the Montgomery Cancer Center for a specialty evaluation. Dr. White agreed with McCray's x-ray that his prostate cancer had not spread outside the prostate and that his PSA levels were at a historical low. Dr. White ordered a second bone scan which occurred on January 17, 2005. This scan showed no significant metastatic change since August 31, 2004. (*Doc. No. 31, Exh. A - Part 1, Exh. A-15, Exh. B.*)

Dr. Williams referred McCray to Dr. Donald Urban at UAB on March 18, 2005 for a radiation seed implantation consult. Dr. Urban, however, wished to have a current prostate

biopsy from McCray before treatment began. On May 17, 2005 McCray was transferred to Dr. Paul Shashy in Montgomery, Alabama, for the biopsy. McCray, however, refused to consent to the procedure and advised Dr. Shashy that he wanted to proceed immediately to UAB's Department of Urology. (*Doc. No. 31, Exh. A - Part 1, Exhs. A-16, A-17, Exh. B*.)

Dr. Peasant subsequently contacted Dr. Urban and convinced him to see McCray in hopes that McCray would decide on a course of treatment. Dr. Urban agreed to Dr. Peasant's request and evaluated McCray on August 25, 2005. He noted that McCray was at "low-risk disease with a PSA of 8.4 but a very large prostate [and] severe lower tract obstructive symptoms." He reviewed with McCray the treatment options available and recommended hormone reduction. Because McCray indicated that he still desired seed implantation, Dr. Urban determined that it was necessary to arrange a consult with Dr. Robert Kim. After the consultation with Dr. Kim McCray elected to follow his cancer and not undergo treatment. He indicated to Dr. Urban that he did not want hormone shots or hormone reduction therapy and indicated that implantation would be the only acceptable form of therapy for him. McCray indicated to the physicians that he did not want to have surgery or external radiation therapy so they recommended that his PSA levels be checked every three months and that he engage in "watchful waiting" for prostate cancer. (*Doc. No. 31, Exh. A - Part 1, Exh. A-18*.)

On November 23, 2005 McCray signed a Prison Health Services Refusal Treatment Form. The form indicated that he was refusing all medical treatment for prostate cancer, including radiation, radiation seed implants, and chemotherapy, due to his impending release

6

on "parole to the VA Hospital in Tuskegee, Al., [which would] continue to evaluate and treat his CA of the prostate." (*Doc. No. 31, Exh. A-19, Exh. C.*)

## II. STANDARD OF REVIEW

To survive the properly supported motion for summary judgment filed by Defendants, McCray is required to produce some evidence which would be admissible at trial supporting his constitutional claims. Rule 56(e), *Federal Rules of Civil Procedure*. Specifically, he must "go beyond the pleadings and ... designate 'specific facts showing that there is a genuine issue for trial.'" *Celotex Corp. v. Catrett*, 477 U.S. 317, 324 (1986). To meet this standard, "[a] mere 'scintilla' of evidence supporting the opposing party's position will not suffice; there must be enough of a showing that the jury could reasonably find for that party. *Anderson v. Liberty Lobby,* 477 U.S. 242, 106 S.Ct. 2505, 2512, 91 L.Ed.2d 202 (1986)." *Walker v. Darby*, 911 F.2d 1573, 1576 -1577 (11th Cir. 1990). A plaintiff's conclusory allegations do not provide sufficient evidence to oppose a motion for summary judgment. *Harris v. Ostrout*, 65 F.3d 912 (11th Cir. 1995); *Fullman v. Graddick*, 739 F.2d 553, 556-557 (11th Cir. 1984). Thus, when a plaintiff fails to make a showing adequate to establish the existence of an element essential to his case, and on which the plaintiff will bear the burden of proof at trial, summary judgment is due to be granted in favor of the moving party. *Celotex*, 477 U.S. at 322; *Barnes v. Southwest Forest Industries, Inc.*, 814 F.2d 607 (11th Cir. 1987).

Where all the evidence before the court which is admissible on its face or which can be reduced to admissible form indicates that there is no genuine issue of material fact and

that the party moving for summary judgment is entitled to it as a matter of law, summary judgment is proper. *Celotex Corp.*, 477 U.S. at 322; *Everett v. Napper*, 833 F.2d 1507, 1510 (11th Cir. 1987); *Wright v. Southland Corp.,* 187 F.3d 1287 (11th Cir. 1999); *Pritchard v. Southern Co. Servs.,* 92 F.3d 1130, 1135 (11th Cir. 1996); *McMillian v. Johnson,* 88 F.3d 1573, 1584-1585 (11th Cir. 1996). Summary judgment is, therefore, appropriate when the pleadings, admissible evidentiary materials and affidavits "show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Rule 56(c) *Federal Rules of Civil Procedure*; *Eberhardt v. Waters*, 901 F.2d 1578, 1580 (11th Cir.1990).

Although factual inferences must be viewed in a light most favorable to the non-moving party, and *pro se* complaints are entitled to liberal interpretation by the courts, a *pro se* litigant does not escape the burden of establishing a genuine issue of material fact. *Brown v. Crawford*, 906 F.2d 667, 670 (11th Cir. 1990). In this case, McCray has failed to demonstrate that there is a genuine issue of material fact in order to preclude summary judgment.

### III. DISCUSSION

*A. The Request for Injunctive and Declaratory Relief*

McCray is no longer a prisoner. The transfer or release of a prisoner renders moot any claims for injunctive or declaratory relief. *See County of Los Angeles v. Davis*, 440 U.S. 625, 631 (1979); *see also Cotterall v. Paul*, 755 F.2d 777, 780 (11th Cir. 1985) (past exposure to even illegal conduct does not in and of itself show a pending case or controversy regarding

injunctive relief if unaccompanied by any continuing present injury or real and immediate threat of repeated injury). As it is clear from the pleadings and records before the court that McCray is no longer incarcerated, his requests for declaratory and injunctive relief have been rendered moot.

*B. The Medical Claims*

To prevail on a claim concerning an alleged denial of adequate medical treatment in violation of the Eighth Amendment, an inmate must, at a minimum, show that the defendants acted with deliberate indifference to his health. *Estelle v. Gamble*, 429 U.S. 97, 106 (1976) ("In order to state a cognizable claim, a prisoner must allege acts or omissions sufficiently harmful to evidence deliberate indifference to serious medical needs. It is only such indifference that can offend 'evolving standards of decency' in violation of the Eighth Amendment."). When seeking relief based on deliberate indifference of correctional medical personnel, an inmate is required to establish "an objectively serious need, an objectively insufficient response to that need, subjective awareness of facts signaling the need and an actual inference of required action from those facts." *Taylor v. Adams*, 221 F.3d 1254, 1258 (11th Cir. 2000); *McElligott v. Foley*, 182 F.3d 1248, 1255 (11th Cir. 1999) (for liability to attach, the official must know of and then disregard an excessive risk to the prisoner); *Waldrop v. Evans*, 871 F.2d 1030, 1033 (11th Cir. 1989); *Rogers v. Evans*, 792 F.2d 1052, 1058 (11th Cir. 1986). Consequently, deliberate indifference occurs only when a defendant "knows of and disregards an excessive risk to inmate health or safety; the [defendant] must both be aware of facts from which the inference could be drawn that a substantial risk of

9

serious harm exists and he must also draw the inference." *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Johnson v. Quinones*, 145 F.3d 164, 168 (4th Cir. 1998) (defendant must have actual knowledge of a serious condition, not just knowledge of symptoms, and ignore known risk to serious condition to warrant finding of deliberate indifference). Furthermore, "an official's failure to alleviate a significant risk that he should have perceived but did not, while no cause for commendation, cannot under our cases be condemned as the infliction of punishment." *Farmer*, 511 U.S. at 838.

> In articulating the scope of inmates' right to be free from deliberate indifference, however, the Supreme Court has also emphasized that not 'every claim by a prisoner that he has not received adequate medical treatment states a violation of the Eighth Amendment.' *Estelle,* 429 U.S. at 105, 97 S.Ct. at 291; *Mandel,* 888 F.2d at 787. Medical treatment violates the eighth amendment only when it is 'so grossly incompetent, inadequate, or excessive as to shock the conscience or to be intolerable to fundamental fairness.' *Rogers,* 792 F.2d at 1058 (citation omitted). Mere incidents of negligence or malpractice do not rise to the level of constitutional violations. *See Estelle,* 429 U.S. at 106, 97 S.Ct. at 292 ('Medical malpractice does not become a constitutional violation merely because the victim is a prisoner.'); *Mandel*, 888 F.2d at 787-88 (mere negligence or medical malpractice 'not sufficient' to constitute deliberate indifference); *Waldrop,* 871 F.2d at 1033 (mere medical malpractice does not constitute deliberate indifference). Nor does a simple difference in medical opinion between the prison's medical staff and the inmate as to the latter's diagnosis or course of treatment support a claim of cruel and unusual punishment. *See Waldrop,* 871 F.2d at 1033 (citing *Bowring v. Godwin,* 551 F.2d 44, 48 (4th Cir. 1977)).

*Harris v. Thigpen*, 941 F.2d 1495, 1505 (11th Cir. 1991). Moreover, "whether government actors should have employed additional diagnostic techniques or forms of treatment 'is a classic example of a matter for medical judgment' and therefore not an appropriate basis for liability under the Eighth Amendment." *Adams v. Poag*, 61 F.3d 1537, 1545 (11th Cir. 1995).

> To be deliberately indifferent, Defendants must have been "subjectively aware of the substantial risk of serious harm in order to have had a ' "sufficiently culpable state of mind." ' " Farmer, 511 U.S. at 834-38, 114 S.Ct. at 1977-80; *Wilson v. Seiter,* 501 U.S. 294, 299, 111 S.Ct. 2321, 2324-25, 115 L.Ed.2d 271 (1991). . . . Even assuming the existence of a serious risk of harm and causation, the prison official must be aware of specific facts from which an inference could be drawn that a substantial risk of serious harm exists--and the prison official must also "draw that inference." *Farmer*, 511 U.S. at 837, 114 S.Ct. at 1979.

*Carter v. Galloway*, 352 F.3d 1346, 1349 (11th Cir. 2003). Thus, to survive summary judgment on his claim of deliberate indifference, McCray is "required to produce sufficient evidence of (1) a substantial risk of serious harm; (2) the defendants' deliberate indifference to that risk; and (3) causation." *Hale v. Tallapoosa County*, 50 F.3d 1579, 1582 (11th Cir. 1995).

In his complaint, McCray makes several, mostly conclusory, allegations concerning his medication. For example, McCray complains that medical personnel claimed to have no record that he had been prescribed the drug Flomax by a free-world physician. His undisputed medical records, however, show that he received Flomax on a continuous basis in addition to numerous other daily medications. (*See Doc. No. 31, Exh. A - Parts 3, 4, 5*.) Similarly, McCray conclusorily asserts that his prescribed medications were changed without explanation, that medication dosages were increased or decreased, that he was given "injurious, inappropriate medications," that medication was withheld, and that his medical records were falsified. (*See Doc. Nos. 1, 37 at 1*.) These allegations, without more, fail to demonstrate any deliberate indifference by Defendants. McCray fails to set forth specific facts with regard to his claims regarding his medication and the alleged falsification of his

11

medical records. Assuming, *arguendo*, that McCray may have experienced delays in the receipt of his medication and/or various changes to his prescribed medications during portions of the relevant time periods in question, he has not come forward with evidence showing that the named defendants deliberately withheld and/or made changes to his medication or knew of an escalating or emergency medical condition in regard to his prescriptions and failed to take steps to correct it. McCray has also not come forward with verifying medical evidence that he was adversely affected by any delays in receipt of and/or changes in the dispensing of his medication. *See Hill v. Dekalb Reg'l Youth Det. Ctr.*, 40 F.3d 1176, 1188-89 (11th Cir. 1994), *abrogated on other grounds by Hope v. Pelzer*, 536 U.S. 730, 739 (2002) (claims that specific medical procedures have been impermissibly delayed requires an inmate to put verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment). With regard to McCray's assertion that Nurse Lassiter made a purposeful decision not to inform him that a painful, dry cough he experienced for over a month was a side effect of medication he was taking (Vasotec), this claim fails to demonstrate a constitutional violation. There is no evidence that McCray complained about his symptom to Defendant Lassiter or any other medical defendant. (*See Doc. No. 37, Exh. A - Parts 1-3*.) Furthermore, no facts have been alleged which indicate that Defendant Lassiter's conduct exposed him to a serious risk of harm or that she in any way disregarded a substantial risk to his health. Plaintiff's dissatisfaction with this defendant's conduct on this occasion and his belief that he did not receive a proper course of treatment or care,

without more,[6] fails to state a violation of his constitutional rights. *See Hamm v. DeKalb County*, 774 F.2d 1567, 1574 (11th Cir. 1985); *Waldrop*, 871 F.2d at 1033.

With regard to McCray's allegations concerning Defendants provision of medical care for his prostate cancer, the undersigned finds from a thorough and careful review of all the evidentiary materials submitted by Defendants in this case that the evidence demonstrates that prison medical personnel routinely examined McCray, evaluated his condition in a timely manner, and responded with appropriate medical treatment and medication in accordance with their evaluations of his condition. The medical records establish that the attending health care providers prescribed and/or dispensed those medications needed in order to treat and/or control symptoms of McCray's cancer. These records also show that medical personnel ordered various medical profiles in response to McCray's physical conditions whenever their observations of McCray indicated the need for such action. Furthermore, the defendant physicians ensured that McCray was referred to free world doctors for consultations, diagnostic procedures, surgery, and medical evaluations as part of their ongoing effort to provide the necessary and appropriate level of care and treatment for McCray's condition. (*Doc. No. 31, Exh. A - Parts 1-3, Exhs. A5-A19.*)

McCray has no constitutional right to specific medical treatment on demand simply because he thinks he needs a certain procedure or because he prefers a certain procedure nor does he have a constitutional right to be treated by a specific doctor, nurse, or other medical

---

[6] There is no indication that Defendant Lassiter's alleged conduct rose to the level of deliberate indifference to a serious medical need.

personnel. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) ("Society does not expect that prisoners will have unqualified access to health care."). Further, to the extent McCray's claim is based upon his own disagreement with the prison medical staff about his medical treatment, such claim does not amount to deliberate indifference. *Estelle*, 429 U.S. at 107; *Hamm*, 774 F.2d at 1575. Additionally, as noted, any claim that specific medical procedures have been impermissibly delayed requires an inmate to put verifying medical evidence in the record to establish the detrimental effect of delay in medical treatment. *Hill*, 40 F.3d at 1188. Here, the court finds that no verifying evidence has been produced tending to establish any detrimental effect of delay in providing medical services or medical treatment to McCray during the relevant time periods.

McCray's contention that Defendants failed to provide timely and adequate medical care for his prostate cancer which allowed it to spread to other parts of his body is not borne out by the record. Rather, the record affirmatively shows that as of January 17, 2005 x-rays of McCray's lumbar spine and bilateral ribs showed no definitive evidence of metastatic disease (although such could not be excluded) and the increased uptake in these areas was determined to be more consistent with degenerative changes and/or was post traumatic. *(See Doc. No. 31, Exh. A-15.)* The record also supports Defendants' assertion that McCray himself, at various times, disregarded, rejected, and/or refused medical procedures and/or treatment recommendations offered to him by the various physicians who treated him which interfered with both the defendant health care providers as well as the free world physicians' ability to treat McCray's condition in the manner they deemed must effective and beneficial

14

based on their training, skills, and experience. While McCray was entirely free to reject the treatment options available and offered to him, his desire for a mode of treatment which skilled and experienced physicians advised him was contraindicated based on his physical condition, does not translate into a denial of adequate medical care.

Based on the foregoing, the court finds that McCray has failed to establish that his constitutional rights were violated by Defendants. Assuming that McCray's condition constitutes a serious medical need, he has not presented evidence of Defendants' deliberate indifference. Nor has he shown that their treatment decisions reflected a substantial departure from accepted professional judgment, practice, or standards which tends to show that they did not make decisions based on such judgments. *See Youngberg v. Romeo*, 457 U.S. 307, 323 (1982). While McCray may believe that his condition required a different course of action or treatment than that which he received from Defendants, such does not establish deliberate indifference. As noted, a difference of opinion between an inmate and health care personnel regarding the expediency or necessity of a specific treatment does not generally create a constitutional claim, and does not do so in the instant case. *Waldrop*, 871 F.2d at 1033; *Hamm*, 774 F.2d at 1575. Here, no evidence exists tending to show that Defendants demonstrated deliberate indifference towards McCray's medical needs by intentionally or deliberately delaying or withholding necessary medical treatment, or by interfering with his ability to access such treatment. The court, therefore, concludes that McCray has failed to present evidence demonstrating that Defendants in any way disregarded a substantial risk to his health by purposely delaying or denying him adequate medical

treatment and care for his prostate cancer, and their motion for summary judgment is, therefore, due to be granted.

## IV. CONCLUSION

Accordingly, it is the RECOMMENDATION of the Magistrate Judge that:

1. The motion for summary judgment filed by Defendants (*Doc. No. 29*) be GRANTED and this case be DISMISSED with prejudice;

2. Judgment be ENTERED in favor of Defendants and against Plaintiff; and

3. The costs of this proceeding be TAXED against Plaintiff for which execution may issue.

It is further

ORDERED that the parties are DIRECTED to file any objections to the said Recommendation on or before **November 14, 2007**. Any objections filed must specifically identify the findings in the Magistrate Judge's Recommendation to which a party objects. Frivolous, conclusive or general objections will not be considered by the District Court. The parties are advised that this Recommendation is not a final order of the court and, therefore, it is not appealable.

Failure to file written objections to the proposed findings and recommendations in the Magistrate Judge's report shall bar the party from a *de novo* determination by the District Court of issues covered in the report and shall bar the party from attacking on appeal factual findings in the report accepted or adopted by the District Court except upon grounds of plain error or manifest injustice. *Nettles v. Wainwright*, 677 F.2d 404 (5th Cir. 1982). *See Stein*

*v. Reynolds Securities, Inc.*, 667 F.2d 33 (11th Cir. 1982). *See also Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir. 1981) (*en banc*), adopting as binding precedent all of the decisions of the former Fifth Circuit handed down prior to the close of business on September 30, 1981.

    Done, this 5th day of November 2007.

                                /s/Terry F. Moorer
                                TERRY F. MOORER
                                UNITED STATES MAGISTRATE JUDGE